1  Michael B. McClellan (CBN 241570)
   C. Kendie Schlecht (CBN 190978)
2  NEWMEYER & DILLION LLP
   895 Dove Street, Fifth Floor
3  Newport Beach, CA 92660
   Telephone:  (949) 854-7000
4  michael.mcclellan@ndlf.com
   kendie.schlecht@ndlf.com
5
   Thomas A. Clare, P.C.*
6  Joseph R. Oliveri*
   Kathryn G. Humphrey*
7  CLARE LOCKE LLP
   10 Prince Street
8  Alexandra, VA 22314
   Telephone:  (202) 628-7400
9  Email:  tom@clarelocke.com
   Email:  joe@clarelocke.com
10 Email:  kathryn@clarelocke.com
   *Pro Hac Vice Application Forthcoming
11
   Attorneys for Applicant August Hermann
12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

15
   In re Ex Parte Application of          |  MISCELLANEOUS CASE NO.:
16
   August Hermann,                        |
17
   Applicant,                             |
                                          |  MEMORANDUM OF LAW IN SUPPORT
18                                         |  OF AUGUST HERMANN'S EX PARTE
   For an Order Pursuant to 28 U.S.C. § 1782 |  APPLICATION FOR AN ORDER
19 Granting Leave to Obtain Discovery     |  PURSUANT TO 28 U.S.C. § 1782
   for Use in Foreign Proceedings         |  GRANTING LEAVE TO OBTAIN
20                                         |  DISCOVERY FOR USE IN FOREIGN
                                          |  PROCEEDINGS
21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

    A.    August Hermann Is a Law-Abiding University Student Known for His Good Character. ...................................................................................... 2

    B.    Mr. Hermann Is Falsely Accused of Rape and Other Criminal Conduct in a Series of Posts by Anonymous Persons on Instagram. ........................... 3

    C.    Substantial Evidence—In Fact, All Available Evidence—Indicates That the Persons Who Published the Defamatory Instagram Posts and/or Are Responsible for the Associated Instagram Accounts Live and Are Located in the United Kingdom. ................................................................................ 6

    D.    Mr. Hermann Intends to Sue the Anonymous Defamers in the United Kingdon Where They Live and Are Located—And This Application Seeks Evidence of Their Identities Necessary for Him to Do So. ......................................... 7

ARGUMENT .......................................................................................................... 9

I.    28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings. ................... 9

II.    Mr. Hermann's Application Satisfies Section 1782's Statutory Requirements. ............... 10

III.    The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Hermann's Application. ........................................................................................ 11

    A.    The First *Intel* Factor Favors Granting the Application:  Meta Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Meta to Provide Discovery. ........................................................ 11

    B.    The Second *Intel* Factor Favors Granting the Application:  The English Court Will Accept, Not Reject, Discovery Obtained from This Court Under Section 1782. ...................................................................................... 12

    C.    The Third *Intel* Factor Favors Granting the Application:  The Application Does Not Attempt to Circumvent Proof-Gathering Restrictions or Policies. .............. 14

    D.    The Fourth *Intel* Factor Favors Granting the Application:   Mr. Hermann's Request Is Not Unduly Burdensome ............................................................ 15

IV.    Although the Merits of Mr. Hermann's English Defamation Claims Are Irrelevant, He Has Proffered Evidence to Establish Every Element of His Claims. .......................... 16

CONCLUSION ...................................................................................................... 19

FILER ATTESTATION ......................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002),
   *aff'd sub nom. Intel Corp. v. Advanced Micro Devices, Inc.*,

5

   542 U.S. 241 (2004) ............................................................................................ 9, 10

6

*Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*,
   591 U.S. 430 (2020) ................................................................................................ 17

7

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,

8

   793 F.3d 1108 (9th Cir. 2015)................................................................................. 11

9

*DeMartini v. DeMartini*,
   833 F. App'x 128 (9th Cir. 2020) ....................................................................... 5, 19

10

*Digit. Shape Techs., Inc. v. Glassdoor, Inc.*,

11

   No. 16-mc-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) .......................... 16

12

*Eurasian Nat. Res. Corp. v. Simpson*,
   No. 19-mc-699, 2020 WL 8456039 (D. Md. Jan. 6, 2020)..................................... 13

13

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,

14

   27 F.4th 136 (2d Cir. 2022).................................................................................... 14

15

*Franklin v. Madden*,
   586 F. App'x 431 (9th Cir. 2014) ......................................................................... 15

16

*Garneau v. City of Seattle*,

17

   147 F.3d 802 (9th Cir. 1998)................................................................................... 15

18

*Givens v. Cal. Dep't of Corrs. & Rehab.*,
   No. 19-cv-0017, 2023 WL 6313986 (E.D. Cal. Sept. 28, 2023) ............................ 15

19

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,

20

   633 F.3d 591 (7th Cir. 2011)................................................................................... 12

21

*Hey, Inc. v. Twitter, Inc. (Hey I)*,
   No. 22-mc-80034, 2022 WL 1157490 (N.D. Cal. Apr. 19, 2022).................. 2, 15, 16

22

*Hey, Inc. v. Twitter, Inc. (Hey II)*,

23

   No. 22-mc-80034, 2023 WL 3874022 (N.D. Cal. June 6, 2023)............................ 18

24

*Highfields Cap. Mgmt., L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) .................................................................... 19

25

*HRC-Hainan Holding Co. v. Yihan Hu*,

26

   No. 19-mc-80277, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) ........................ 9, 15

27

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
   No. 19-mc-80215, 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ............................ 14

28

*In Credit Suisse Virtuoso*,
  No. 21-mc-80308, 2022 WL 1786050 (N.D. Cal. June 1, 2022)................................ 13

*In re ANZ Commodity Trading Pty Ltd.*,
  No. 17-mc-80070, 2017 WL 3334878 (N.D. Cal. Aug. 4, 2017) ............................ 10

*In re Apple Retail UK Ltd.*,
  No. 20-mc-80109, 2020 WL 3833392 (N.D. Cal. July 8, 2020) .................................. 1, 12, 16

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998), *as amended* (July 23, 1998) ............................ 14

*In re Bracha Found.*,
  663 F. App'x 755 (11th Cir. 2016) ...................................................... 14

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019)............................................................. 9

*In re Eurasian Nat. Res. Corp.*,
  No. 18-mc-80041, 2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ........................... 12

*In re Gliner*,
  133 F.4th 927 (9th Cir. 2025) ......................................................... 10, 17

*In re Gulf Inv. Corp.*,
  No. 19-mc-593, 2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020)................................ 11

*In re Guy*,
  No. 19-mc-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004)................................ 13

*In re Hattori*,
  No. 21-mc-80236, 2021 WL 4804375, at *5 (N.D. Cal. Oct. 14, 2021) ................... 16

*In re Joint Stock Co. Raiffeinsenbank*,
  No. 16-mc-80203, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ........................... 15

*In re JSC Com. Bank Privatbank*,
  No. 21-mc-80216, 2021 WL 4355334 (N.D. Cal. Sept. 24, 2021)........................... 13

*In re Legatum*,
  No. 21-mc-80032, 2021 WL 706436 (N.D. Cal. Feb. 23, 2021)............................ 2, 13, 15, 16

*In re Letters Rogatory from the Tokyo Dist.*,
  539 F.2d 1216 (9th Cir. 1976)........................................................... 1

*In re Letters Rogatory From Tokyo Dist. Prosecutor's Off.*,
  16 F.3d 1016 (9th Cir. 1994)........................................................... 15

*In re Motorola Mobility, LLC*,
  No. 12-cv-80243, 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) ......................... 12, 14

*In re Nouvel, LLC*,
  No. 22-mc-0004, 2022 WL 3012521 (C.D. Cal. June 8, 2022),
  *adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ............................... 14

MEM. OF LAW IN SUPP. OF AUGUST HERMANN'S APPLICATION PURSUANT TO 28 U.S.C. § 1782

*In re Pishevar*,
No. 21-mc-105, 2023 WL 2072454 (D.D.C. Feb. 17, 2023) .................................................. 13

*In re Premises Located at 840 140th Ave. NE*,
634 F.3d 557 (9th Cir. 2011) ................................................................................................... 9

*In re Republic of Ecuador*,
No. 10-mc-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ........................................... 1

*In re Request for Judicial Assistance for the*
*Issuance of Subpoena Pursuant to 28 U.S.C. § 1782*,
No. 11-cv-80136, 2011 WL 2747302 (N.D. Cal. July 13, 2011) ........................................... 12

*In re Takada (Takada I)*,
No. 22-mc-80221, 2022 WL 4913183 (N.D. Cal. Oct. 3, 2022) ............................................. 10

*In re Takada (Takada II)*,
No. 22-mc-80221, 2023 WL 1452080 (N.D. Cal. Feb. 1, 2023) ............................... 2, 16, 17, 18

*In re Takagi*,
No. 22-mc-80240, 2022 WL 7620511 (N.D. Cal. Oct. 13, 2022) ........................................... 10

*In re Team Co.*,
No. 22-mc-80183, 2023 WL 1442886 (N.D. Cal. Feb. 1, 2023) ......................................... 17, 18

*In re Varian Med. Sys. Int'l AG*,
No. 16-mc-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ..................................... 12, 14

*In re Yasuda*,
No. 19-mc-80156, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020) ............................................. 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .................................................................................................... *passim*

*IPCom GMBH & Co. KG v. Apple Inc.*,
61 F. Supp. 3d 919 (N.D. Cal. 2014) ........................................................................................ 1

*IS Prime Ltd. v. Glassdoor, Inc.*,
No. 21-mc-80178, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021)................................... 2, 13, 16

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019)................................................................................................... 9

*London v. Does 1-4*,
279 F. App'x 513 (9th Cir. 2008) ......................................................................................... 12

*Rothe v. Aballi*,
No. 20-12543, 2021 WL 4429814 (11th Cir. Sept. 27, 2021) ............................................... 14

*Siemens AG v. W. Digital Corp.*,
No. 13-cv-1407, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ............................................. 12

*Takagi v. Twitter, Inc.*,
No. 22-mc-80240, 2023 WL 1442893 (N.D. Cal. Feb. 1, 2023) ......................................... 17, 18

MEM. OF LAW IN SUPP. OF AUGUST HERMANN'S APPLICATION PURSUANT TO 28 U.S.C. § 1782

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ................................................................................. 17

*United States v. Google LLC*,
   690 F. Supp. 3d 1011 (N.D. Cal. 2023) ................................................................ 18

*United States v. Meta Platforms, Inc.*,
   No. 23-mc-80249, 2023 WL 8438579 (N.D. Cal. Dec. 5, 2023)............................ 18

*United States v. Sealed 1*,
   235 F.3d 1200 (9th Cir. 2000)............................................................................... 10

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990)............................................................................................. 17

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
   596 U.S. 619 (2022)............................................................................................. 18

*Zuru, Inc. v. Glassdoor, Inc.*,
   614 F. Supp. 3d 697 (N.D. Cal. 2022) ........................................................... 17, 18

**Statutes**

28 U.S.C. § 1782 ....................................................................................... *passim*

Cal. Civ. Code § 45 ........................................................................................ 5, 19

**United Kingdom Cases**

*Nokia Corp. v. Interdigital Technology Corp.*
   [2004] EWHC 2920 .............................................................................................. 13

*South Carolina Co. v. Assurantie N.V.*
   [1987] 1 A.C. 24 (HC) ......................................................................................... 13

**United Kingdom Statutes**

U.K. Defamation Act of 2013 ................................................................................. 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Applicant August Hermann submits this Memorandum of Law in support of his *Ex Parte*[1] Application for an Order pursuant to 28 U.S.C. § 1782 requesting limited discovery from Meta Platforms, Inc. ("Meta") to aid foreign litigation in the United Kingdom. Specifically, Mr. Hermann's Application requests discovery for a lawsuit in England that he intends to file against the persons responsible for the publication of certain posts on Instagram (which Meta owns and operates) that make numerous false and defamatory accusations against him, including allegations of rape, sexual harassment, stalking, and other crimes.

Mr. Hermann files this Section 1782 Application as a last resort because critical evidence necessary for his U.K. lawsuit is only available in this jurisdiction. As explained below, the persons who published the defamatory Instagram posts have done so anonymously, but substantial evidence—indeed, all available evidence—indicates that they live and are located in England in the United Kingdom. Accordingly, Mr. Hermann intends to sue them in England, where they will be subject to personal jurisdiction. To do so, however, he must obtain information revealing their identities. Meta will have that information, because Instagram users must provide Meta their full name and email address or mobile phone number to sign up for an Instagram account, and the Instagram Terms of Use provide that Instagram users must "provide [Meta] with accurate and up to date information (including registration information)" and that they "may not impersonate someone ... [they] aren't." But Meta has refused to provide information identifying the persons who published the defamatory Instagram posts without a Court Order. Accordingly, Mr. Hermann's Application requests leave to issue a narrowly tailored subpoena to Meta for documents sufficient to identify the persons who published the defamatory Instagram posts and/or are responsible for the Instagram accounts from which they were published, and a short deposition

---

[1] "Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an ex parte basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (quoting *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)); *see also In re Republic of Ecuador*, No. 10-mc-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010); *In re Letters Rogatory from the Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976).

for Meta to authenticate those documents. Only with that information can Mr. Hermann bring his U.K. lawsuit to remedy the harm that the defamatory Instagram posts have caused to him and his reputation.

As explained below, Mr. Hermann's Application satisfies all Section 1782 statutory requirements, and all discretionary factors that courts consider in evaluating Section 1782 Applications weigh in favor of granting his Application. In similar circumstances, courts have repeatedly granted Section 1782 Applications seeking such discovery. *See, e.g.*, *Hey, Inc. v. Twitter, Inc. (Hey I)*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (N.D. Cal. Apr. 19, 2022) (granting application to discover identity of anonymous defamer); *In re Takada (Takada II)*, No. 22-mc-80221, 2023 WL 1452080, at *2-3 (N.D. Cal. Feb. 1, 2023) (same; denying motion to quash subpoena); *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4 (N.D. Cal. Dec. 13, 2021) (same); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D. Cal. Feb. 23, 2021) (same).

The Court should grant Mr. Hermann's Application.

## FACTUAL BACKGROUND

**A.    August Hermann Is a Law-Abiding University Student Known for His Good Character.**

August Hermann is a student at Princeton University. (Hermann Decl. ¶ 2.)[2] He is a bright and capable young man who is excelling academically and has a promising future. (*Id.* ¶ 3.) Mr. Hermann has never engaged in any illegal or improper conduct, and he has earned a reputation as an ethical, respectful, law-abiding person. (*Id.* ¶ 3, 8.)

Mr. Hermann's parents, actors Mariska Hargitay and Peter Hermann, are widely recognized for their professional accomplishments. (*Id.* ¶ 4.) Ms. Hargitay, in particular, has cultivated a large, active, global fanbase. (*Id.* ¶ 5.) In recent years, certain individuals within that fanbase have reacted negatively when they perceive a lack of engagement or personal attention from her. (*Id.*)

---

[2] Decl. of August Hermann in Supp. of His *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Oct. 24, 2025) (filed contemporaneously herewith).

1  Egregiously, Mr. Hermann has become a target for those seeking to harm or exploit his family.

2  (*Id*. ¶ 6)

3      **B.    Mr. Hermann Is Falsely Accused of Rape and Other Criminal Conduct in a
            Series of Posts by Anonymous Persons on Instagram.**

4      Mr. Hermann recently discovered that he is being targeted with false accusations of rape,

5  sexual harassment, sexual assault, stalking, and threats to commit murder by anonymous users in a

6  series of posts and comments published on Instagram in the past month (*id.* ¶ 6), a social media

7  service owned and operated by Meta.  (Oliveri Decl. ¶ 6.)[3]  The posts were anonymously published

8  on Instagram by the persons with the following three Instagram accounts (collectively, the

9  **"Instagram Accounts"**):

10     1.  Instagram ID 72079058205 (which has used the usernames "@therealtrishc",
           "@londonsroyaltyy_", and "@royalqueenxo._");

11

12     2.  Instagram ID 76331731607 (which has used the username "@jayniespalace" and
           "@jayniexmariska"); and

13

14     3.  Instagram ID 65674645318 (which has used the username "@isisnicholehubert").

15  (Hermann Decl. ¶ 6 & Ex. 1.)

16     The posts published on Instagram by the persons using those accounts (collectively referred

17  to herein as the **"Instagram Posts"**) that falsely accuse Mr. Hermann of various crimes are the

18  following:

19     1.  **Post #1:**  An Instagram post published by the anonymous person with the username
           "@therealtrishc" (Instagram ID: 72079058205) that contains a screenshot of
           Mr. Hermann's Instagram profile showing his name and photograph with text overlaid
20         that states, in part, "I ASK ALL OF PRINCESTON [*sic*] UNIVERSITY TO STEER
           CLEAR OF THIS AUGUST HERMANN!!  HE IS A RAPIST AND TAKES
21         ADVANTAGE OF WOMEN" and a comment/caption that further claims that
           Mr. Hermann is a "RAPIST" and "pervert";
22

23     2.  **Post #2:**  An Instagram story published by the anonymous person with the username
           "@therealtrishc" (Instagram ID: 72079058205) that contains a screenshot of
24         Mr. Hermann's Instagram profile showing his name and photograph with text overlaid
           that states, in part, "I ASK ALL OF PRINCESTON [*sic*] UNIVERSITY TO STEER
25         CLEAR OF THIS AUGUST HERMANN!!  HE IS A RAPIST AND TAKES
           ADVANTAGE OF WOMEN";

26

27  [3] Decl. of Joseph R. Oliveri in Supp. of August Hermann's *Ex Parte* Appl. for an Order Pursuant
    to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Oct. 24, 2025)
28  (filed contemporaneously herewith).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.  **Post #3:**  An Instagram post published by the anonymous person with the username "@therealtrishc" (Instagram ID: 72079058205) that contains a screenshot of Mr. Hermann's mother's (Ms. Hargitay's) Instagram profile showing her name and photograph with text overlaid that states, in part, "your son is a rapist and I will be calling to his school to report him for sexual harassment" and a comment/caption that further claims that Mr. Hermann "IS A PREDATOR";

4.  **Post #4:**  An Instagram post published by the anonymous person with the username "@therealtrishc" (Instagram ID: 72079058205) that contains a screenshot of Mr. Hermann's Instagram profile with his name and photograph with text overlaid that states "RAPIST BEWARE," and containing a comment published by the anonymous person with the username "@jayniespalace" (Instagram ID: 76331731607) that states "RAPIST";

5.  **Post #5:**  An Instagram story published by the anonymous person with the username "@therealtrishc" (Instagram ID: 72079058205) that contains a screenshot of Princeton University's campus, location, and phone number and text overlaid that reads "They open on the week days calling them tomorrow.  Why is a rapist on your campus?";

6.  **Post #6:**  An Instagram post published by the anonymous person with the username "@londonsroyaltyy_" (Instagram ID: 72079058205) that contains a screenshot of Mr. Hermann's Instagram profile showing his name and photograph with text overlaid that states, "RAPIST BEWARE" and a comment/caption that further claims that Mr. Hermann is a "rapist," that he "raped Denise and HARASSED her, made fake pages to threaten her life, stalked her, and said if she ever came forward he was gonna KILL HER," that he is a "pervert," that "[h]e takes advantage of women and rapes them," and that he is a "PREDATOR";[4]

7.  **Post #7:**  An October 16, 2025 post published by the anonymous person with the username "@jayniespalace" (Instagram ID: 76331731607) that contains an image of Mr. Hermann's mother (Ms. Hargitay) and grandmother (Jayne Mansfield) with text overlaid that states "All this work for nothing" and contains a comment from Instagram username "@therealtrishc" (Instagram ID: 72079058205) that admits that that anonymous person "slander[ed]" Mr. Hermann;

8.  **Post #8:**  An October 19, 2025 post published by the anonymous person with the username "@jayniespalace" (Instagram ID: 76331731607) that contains an image of Mr. Hermann's mother (Ms. Hargitay) and a comment/caption that states that Ms. Hargitay's son (Mr. Hermann) is "a RAPIST" that also admits that the person who nonymously  published it has "never seen ... [Mr. Hermann] a day in [her] life and probably never will";

9.  **Post #9:**  An Instagram post published by the anonymous person with the username "@jayniespalace" (Instagram ID: 76331731607) that contains an image of Mr. Hermann and his mother (Ms. Hargitay) with text overlaid on Mr. Hermann that states "Rapist"; and

10. **Post #10:**  An Instagram post published by the anonymous person with the username "@isisnicholehubert" (Instagram ID: 65674645318) that contains an image of

---

[4] The image of Post #6 attached in Exhibit 1 to the Hermann Declaration was taken from a Reddit post that added the text "r/MWMHMI" and "u/roxiegirl15 [¶] How far does this have to go? [¶] Is this MW? MI? Can the police be co...."  That text is not part of the original Post #6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Hermann and his mother (Ms. Hargitay) with text overlaid on Mr. Hermann that states "Rapist."

(Hermann Decl. ¶ 6 & Ex. 1.)

The statements and accusations in the Instagram Posts convey categorically and demonstrably false (purported) facts.  (Hermann Decl. ¶¶ 7-8.)  Mr. Hermann is and always has been a law-abiding and ethical person, and he has **never** engaged in any criminal acts of any kind.  (*Id.* ¶¶ 3, 8.)  Mr. Hermann is **not** "a rapist"; he has **never** "taken advantage of women"; he is **not** a "predator"; he is **not** "a pervert"; he has **never** "stalked" anyone; he has **never** "harassed" anyone; he has **never** "threaten[ed] [anyone's] life"; and he has **never** threatened to "kill" anyone.  (*Id.* ¶ 8.)  Indeed, Mr. Hermann does not know "Denise" or "@keepingupwithdenisemurphy" and has never interacted with that person.  (*Id.*)  The person responsible for Instagram Account ID 76331731607 ("@jayniespalace") even acknowledges that the accusations against Mr. Hermann in the Instagram Posts are false, admitting that she or he has "never seen ... [Mr. Hermann] a day in [their] life and probably never will."  (*Id.* ¶ 6 & Ex. 1 (Post #8); Hartley Decl. ¶ 14.)

The statements and accusations plainly accuse Mr. Hermann of criminal actions (including rape, harassment, stalking, and criminal threats) and they plainly damage Mr. Hermann and his reputation as a law-abiding and ethical person.  (Hermann Decl. ¶¶ 3, 8-9.)  As such, they are defamatory under English law (and U.S. law).  (Hartley Decl. ¶ 14.)[5]  Indeed, in a comment to one of the Instagram Posts, the person responsible for Instagram Account ID 72079058205 ("@therealtrishc") admits that she "slander[ed]" Mr. Hermann.  (Hermann Decl. ¶¶ 6 & Ex. 1 (Post #7); Hartley Decl. ¶ 14.)  And the person behind another Instagram account ((Instagram ID: 77650407348) that is apparently linked to the Instagram Accounts, messaged Mr. Hermann's mother (Ms. Hargitay) admitting to lying about Mr. Hermann to "expose" Ms. Hargitay (Young Decl. ¶3 & Ex. 2; Hartley Decl. ¶ 14.)

---

[5] Decl. of Phil Hartley in Supp. of August Hermann's *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Oct. 24, 2025) (filed contemporaneously herewith); *see also* U.K. Defamation Act of 2013 §§ 5, 10; Cal. Civ. Code § 45; *DeMartini v. DeMartini*, 833 F. App'x 128, 132 (9th Cir. 2020) ("Perhaps the clearest example of [defamation] per se is an accusation of a crime.").

**C.    Substantial Evidence—In Fact, All Available Evidence—Indicates That the Persons Who Published the Defamatory Instagram Posts and/or Are Responsible for the Associated Instagram Accounts Live and Are Located in the United Kingdom.**

Mr. Hermann and his representatives have undertaken substantial efforts to identify the persons who published the false and defamatory Instagram Posts and/or are responsible for the Instagram Accounts from which they were published. (Hermann Decl. ¶¶ 9, 12; Young Decl. ¶¶ 3-9.)[6] And although he and his representatives have been unable to identify those persons—hence the need for this Application, as explained further below—they have identified substantial evidence that those persons live and are located in the United Kingdom, and specifically in England. (Hermann Decl. ¶ 10; Young Decl. ¶¶ 3-9.)

The person responsible for Instagram Account ID 72079058205 (which has used the usernames "@therealtrishc", "@londonsroyaltyy_", and "@royalqueenxo._") wrote in their account biography that he or she is "UK raised" and a "Leicester grad '23," referring to the University of Leicester in England. (Young Decl. ¶ 6.) Corroborating those statements, the person has posted a photo showing women at a graduation ceremony apparently at the University of Leicester. (*Id.*) The person also states that they are a "retired royal marine," indicating they were a member of the United Kingdom's armed forces. (*Id.*)

The person responsible for the Instagram Account ID 76331731607 (which has used the usernames "@jayniespalace" and "@jayniexmariska") lists their name as "Denise" and appears to be the same "Denise" referenced by Instagram Account ID 72079058205 (username "@londonsroyaltyy_"). (*Id.* ¶ 7.) The account follows United Kingdom-focused accounts such as, "UK Says No More" and Spotify UK & Ireland, and the person responsible for the account has posted content referencing the University of Leicester. (*Id.*)

The person responsible for Instagram Account ID 65674645318 (which has used the username "@isisnicholehubert") wrote in their account biography that they are "Scotland born" and "LDN raised" (with "LDN" being an obvious reference to London). (*Id.* ¶ 8.) Multiple posts

---

[6] Decl. of Juliet Young in Supp. of August Hermann's *Ex Parte* Appl. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Disc. for Use in Foreign Proceedings (Oct. 24, 2025) (filed contemporaneously herewith).

made by the person responsible for the account are tagged to locations in the United Kingdom, including Manchester, Sheffield, and London. (*Id.*) Additionally, a video posted by the person responsible for the account shows the person in Margate, Kent (in England) in July 2025. (*Id.*) The account also follows several United Kingdom-focused accounts, including "Heavenly Desserts UK GB," "@complex_uk", "@vevo_uk", "@europaeditionsuk", and "@rapgameukbbc". (*Id.*) Posts on the account also use British-English phrases such as "mum" and "mummy," thus providing further indication that the person responsible for the account is based in the United Kingdom. (*Id.*)

Additionally, all three of the Instagram Accounts follow and interact with one another, further reinforcing their shared connection to the United Kingdom. (*Id.* ¶ 9.)

### D. Mr. Hermann Intends to Sue the Anonymous Defamers in the United Kingdon Where They Live and Are Located—And This Application Seeks Evidence of Their Identities Necessary for Him to Do So.

Because the defamatory statements and accusations in the Instagram Posts have caused—and are continuing to cause—substantial harm to Mr. Hermann and his reputation, Mr. Hermann intends to sue the persons responsible for publishing the Instagram Posts. (Hermann Decl. ¶¶ 9, 11-13; Hartley Decl. ¶¶ 3-4.) And because substantial evidence—indeed, all available evidence—indicates the persons responsible for publishing the defamatory Instagram Posts live and are located in the United Kingdom—specifically, in England—he intends to sue them in England, where the courts would have jurisdiction over them and which would be the most appropriate forum in which to bring his claims. (Hermann Decl. ¶¶ 9, 11-13; Young Decl. ¶¶ 3-9; Hartley Decl. ¶¶ 3-4, 15.) To that end, Mr. Hermann has retained English counsel—the law firm of Schillings International LLP and Phil Hartley—to bring an English defamation action against those persons. (Hermann Decl. ¶ 14, Hartley Decl. ¶¶ 3-4.)

However, Mr. Hermann and his English counsel are unable to presently file their contemplated lawsuit because they are unable to identify persons who anonymously published the defamatory Instagram Posts using the Instagram Accounts. (Hermann Decl. ¶ 12; Hartley Decl. ¶ 4; Oliveri Decl. ¶ 4.) Neither Instagram nor Meta provide information tending to identify the person(s) who published the Instagram Posts or are responsible for the Instagram Accounts.

1  (Hermann Decl. ¶ 12; Oliveri Decl. ¶ 4.)  Thus, Mr. Hermann and his counsel have been unable to

2  identify those persons.  (Hermann Decl. ¶ 12; Oliveri Decl. ¶ 4.)

3       Meta, however, almost certainly possesses documents containing information that will

4  identify or lead to the identity of the persons who published the defamatory Instagram Posts using

5  the Instagram Accounts.  (Oliveri Decl. ¶ 9.)  To sign up for an Instagram account, a person must

6  provide Meta a mobile phone number or email address and their full name (or log in with their

7  Facebook account, which likewise requires a person to provide their full name and a mobile number

8  or email address, as well as their date of birth).  (Oliveri Decl. ¶ 5 & Ex. 2.)  Moreover, persons

9  who use Instagram must agree to the Instagram Terms of Use, and those Terms of Use provide that

10  Instagram users must "provide [Meta] with accurate and up to date information (including

11  registration information), which may include providing personal data." (*Id.* ¶¶ 6-7 & Ex. 2 at § 4.2.)

12  The Instagram Terms of Use further provide that Instagram users "may not impersonate someone

13  ... [they] aren't." (*Id.*)[7] But Meta has refused to provide information identifying the persons who

14  published the defamatory Instagram posts without a Court Order.  (Hermann Decl. ¶ 12.)

15       Accordingly, Mr. Hermann brings this Application to obtain from Meta information

16  sufficient to identify the person or persons responsible for publishing the defamatory Instagram

17  Posts using the Instagram Accounts.  (*Id.* ¶¶ 12-14; Oliveri Decl. ¶ 3.)  To that end, Mr. Hermann

18  seeks leave to issue a document subpoena to Meta requesting the following limited documents:

19       Documents and Communications sufficient to identify the person(s) who made,
        published, and/or caused to be made or published the Instagram Posts, and/or who
20       own, registered, and/or have accessed the Instagram Accounts, including
        Documents and Communications reflecting the name(s), address(es), email
21       address(es), phone numbers, and/or any forms or means of payment relating to the
        Instagram Posts and/or Instagram Accounts, and all IP address(es) from which the
22       Instagram Accounts have been accessed and/or the Instagram Posts were made or
        published.
23
   (*See* Document Subpoena (Ex. A to Application).)  And he seeks leave to issue a deposition
24
   subpoena for a short deposition during which a Meta representative can authenticate and explain
25
   the documents produced pursuant to the deposition subpoena.  (*See* Deposition Subpoena (Ex. B to
26
   Application).)
27
   ─────────────────
28  [7] The Facebook Terms of Use provide similarly.  (Oliveri Decl. ¶ 8 & Ex. 3 at § 3.1.)

1

**<u>ARGUMENT</u>**

2

**I.     28 U.S.C. § 1782 Broadly Allows Discovery in Aid of Foreign Proceedings.**

3          28 U.S.C. § 1782 "is the product of congressional efforts, over the span of nearly 150 years,

4    to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*

5    *v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).   And over time, Congress has

6    consistently and "substantially broadened the scope of assistance federal courts could provide for

7    foreign proceedings." *Id.* at 247-48; *In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557,

8    563 (9th Cir. 2011) (emphasizing the "broad assistance to foreign nations and tribunals" that

9    Section 1782 furnishes); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 667, 669 (9th

10   Cir. 2002) ("Section 1782 is broad and inclusive" and "allow[s] ... liberal discovery[.]"), *aff'd sub*

11   *nom. Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *In re del Valle Ruiz*, 939

12   F.3d 520, 527 (2d Cir. 2019) (noting "Congress's 'aim that the statute be interpreted broadly'").

13         Section 1782 provides, in relevant part:

14             The district court of the district in which a person resides or is found may order him
               to give his testimony or statement or to produce a document or other thing for use
15             in a proceeding in a foreign or international tribunal....   The order may be made ...
               upon the application of any interested person and may direct that the testimony or
16             statement be given, or the document or other thing be produced[.]

17   28 U.S.C. § 1782(a). Thus, under Section 1782, a federal court may grant an *ex parte* application

18   for discovery when three statutory requirements are satisfied: **(1)** the person from whom discovery

19   is sought resides or is found in the district of the district court where the application is made; **(2)** the

20   discovery is for use in a proceeding before a foreign tribunal; and **(3)** the application is made by an

21   interested person.  *Id.*; *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).   "Once those

22   three statutory requirements are met, a district court has wide discretion to grant discovery under

23   [Section] 1782." *HRC-Hainan Holding Co. v. Yihan Hu*, No. 19-mc-80277, 2020 WL 906719, at

24   *3 (N.D. Cal. Feb. 25, 2020).

25         In exercising their discretion to grant discovery, district courts consider four factors

26   identified by the Supreme Court in *Intel*: **(1)** whether the person from whom discovery is sought is

27   a participant in the foreign proceeding; **(2)** the nature of the foreign tribunal, the character of the

28   proceedings abroad, and the receptivity of the foreign government to U.S. federal court judicial

1   assistance; **(3)** whether the request conceals an attempt to circumvent foreign proof-gathering

2   restrictions or other policies of a foreign country or the United States; and **(4)** whether the request

3   is unduly burdensome. *Intel*, 542 U.S. at 264-65; *In re Gliner*, 133 F.4th 927, 933 (9th Cir. 2025).

4       As explained below, Mr. Hermann's Application satisfies all three statutory Section 1782

5   requirements and all four discretionary factors weigh in favor of granting his Application.

6   **II.     Mr. Hermann's Application Satisfies Section 1782's Statutory Requirements.**

7       Mr. Hermann's Application for limited discovery from Meta easily satisfies Section 1782's

8   three statutory requirements.

9       ***First***, Meta "resides or is found" in this District because it is headquartered and has its

10  principal place of business in Menlo Park, California.  (Oliveri Decl. ¶¶ 10-11 & Ex. 4.)  Under

11  Section 1782, "[a] business entity is 'found' in the judicial district where it has its principal place

12  of business."  *See, e.g.*, *In re Takagi*, No. 22-mc-80240, 2022 WL 7620511, at *3 (N.D. Cal.

13  Oct. 13, 2022); *In re Takada (Takada I)*, No. 22-mc-80221, 2022 WL 4913183, at *3 (N.D. Cal.

14  Oct. 3, 2022) (same).[8]

15      ***Second***, Mr. Hermann's Application seeks discovery for use in a contemplated proceeding

16  before a foreign tribunal—namely, the Courts of England and Wales in the United Kingdom.

17  As the Supreme Court has explained, the requisite foreign proceeding "need not be 'pending' or

18  'imminent'"; rather, "the 'proceeding' for which discovery is sought" only need be "in reasonable

19  contemplation."  *Intel*, 542 U.S. at 247; *accord Advanced Micro*, 292 F.3d at 667; *United States v.*

20  *Sealed 1*, 235 F.3d 1200, 1205 (9th Cir. 2000); *see In re Yasuda*, No. 19-mc-80156, 2020 WL

21  759404, at *4 (N.D. Cal. Feb. 14, 2020); *In re ANZ Commodity Trading Pty Ltd.*, No. 17-mc-80070,

22  2017 WL 3334878, at *3 (N.D. Cal. Aug. 4, 2017) ("It is of no import that [Applicant] has not yet

23  filed suit[.]").   In fact, this statutory requirement is satisfied even where (unlike here) the

24  contemplated foreign litigation is only at "the investigative stage." *Intel*, 542 U.S. at 243; *Yasuda*,

25

26  [8] Indeed, the Instagram Terms of Use, to which persons who use Meta's Instagram service must
    agree as a condition to use it, provides that "[f]or any claim that is not arbitrated or resolved in
27  small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the
    Northern District of California or a state court located in San Mateo County," and "[y]ou also agree
28  to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such
    claim."  (Oliveri Decl. ¶ 10 & Ex. 2, Instagram Terms of Use § 7.4.)

2020 WL 759404, at *4.    Here, Mr. Hermann's English lawsuit is well within "reasonable contemplation": as set forth in Mr. Hermann's and his attorneys' declarations and explained above, Mr. Hermann intends to sue the persons responsible for publishing the defamatory Instagram Posts as soon as discovery produced pursuant to his Application identifies them.    (Hermann Decl. ¶¶ 13-14; Hartley Decl. ¶¶ 3-4.)    And, demonstrating the promptness with which Mr. Hermann intends to file his English lawsuit, he has already retained English counsel for that purpose. (Hermann Decl. ¶ 14; Hartley Decl. ¶¶ 3-4.)    That is more than sufficient to demonstrate that the proceeding is "in reasonable contemplation."  *See In re Gulf Inv. Corp.*, No. 19-mc-593, 2020 WL 7043502, at *3 (S.D.N.Y. Nov. 30, 2020) ("Sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement.").

*Third*, Mr. Hermann, as the plaintiff in his upcoming English lawsuit, qualifies as an "interested party" entitled to seek discovery under Section 1782.    There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."  *Intel*, 542 U.S. at 256; *see also Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) ("An 'interested person' seeking to invoke the discovery mechanism set forth under § 1782 may include 'not only litigants before foreign or international tribunals, but also ... any other person [who] ... merely possess[es] a reasonable interest in obtaining [judicial] assistance.'" (quoting *Intel*, 542 U.S. at 256-57)).

## III.    The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Hermann's Application.

All four discretionary *Intel* factors likewise weigh in favor of granting Mr. Hermann's Application for limited discovery.

### A.    The First *Intel* Factor Favors Granting the Application:  Meta Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Meta to Provide Discovery.

The first *Intel* factor weighs in favor of granting discovery because Meta will not be a party to Mr. Hermann's contemplated English lawsuit.  (Hermann Decl. ¶ 13.)  As the Supreme Court has explained, "nonparticipants in [a] foreign proceeding may be outside the foreign tribunal's

1    jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

2    absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *see also, e.g.*, *London v. Does 1-4*, 279 F. App'x 513,

3    515 (9th Cir. 2008) (affirming grant of application; explaining that "evidence sought may be

4    unattainable in the [foreign] court while it is within the district court's jurisdiction and accessible

5    in the United States"); *In re Motorola Mobility, LLC*, No. 12-cv-80243, 2012 WL 4936609, at *2

6    (N.D. Cal. Oct. 17, 2012) (same); *In re Request for Judicial Assistance for the Issuance of*

7    *Subpoena Pursuant to 28 U.S.C. § 1782*, No. 11-cv-80136, 2011 WL 2747302, at *5 (N.D. Cal.

8    July 13, 2011).

9         Because Meta, a U.S. corporation headquartered in Menlo Park, California (in this District),

10   will be a nonparticipant in Mr. Hermann's contemplated English lawsuit, the English Court will be

11   unable to compel it to produce discovery and this Application is the only means through which

12   Mr. Hermann can discover from Meta evidence necessary to his English lawsuit—namely,

13   documents identifying or leading to the identities of the person(s) who published the defamatory

14   Instagram Posts.  This factor thus weighs in favor of granting Mr. Hermann's Application.

15   **B.**    **The Second *Intel* Factor Favors Granting the Application:  The English Court**
16          **Will Accept, Not Reject, Discovery Obtained from This Court Under**
            **Section 1782.**

17        The second *Intel* factor—the nature of the foreign tribunal, the character of the proceedings

18   abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance—

19   weighs in favor of discovery where, as here, there is no "'authoritative proof that a foreign tribunal

20   would reject evidence obtained with the aid of Section 1782.'"  *Siemens AG v. W. Digital Corp.*,

21   No. 13-cv-1407, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013); *accord In re Apple Retail UK*

22   *Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020).  In evaluating this factor,

23   courts must "err on the side of permitting discovery."  *In re Eurasian Nat. Res. Corp.*, No. 18-mc-

24   80041, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *accord In re Varian Med. Sys. Int'l AG*,

25   No. 16-mc-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (factor favors discovery

26   when "'there is nothing to suggest that the [foreign] court would be affronted by [plaintiff's]

27   recourse to U.S. discovery'" (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597

28   (7th Cir. 2011))).

1    Notably, "no [] aspect of the nature of the English court or the character of the anticipated

2    English proceedings weighs against [a Section 1782] application."  *In Credit Suisse Virtuoso*,

3    No. 21-mc-80308, 2022 WL 1786050, at *10-11 (N.D. Cal. June 1, 2022).  And district courts

4    routinely grant requests for discovery under Section 1782 for use in litigation in the United

5    Kingdom.  *See, e.g.*, *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at *3-4

6    (N.D. Cal. Dec. 13, 2021); *In re JSC Com. Bank Privatbank*, No. 21-mc-80216, 2021 WL 4355334,

7    at *1-4 (N.D. Cal. Sept. 24, 2021); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, at *3 (N.D.

8    Cal. Feb. 23, 2021).[9]

9    Moreover, English attorney Phil Hartley has explained in his Declaration that, based on his

10   experience, U.K. courts—including the Courts of England and Wales—are receptive to receiving

11   evidence obtained from U.S. courts under 28 U.S.C. § 1782 and would be so receptive in this

12   matter.  (Hartley Decl. ¶¶ 5-12.)  Indeed, the House of Lords in *South Carolina Co. v. Assurantie*

13   *N.V.* [1987] 1 A.C. 24, 42 (HC)—the "leading authority" on the issue—has expressly held that a

14   party does nothing wrong "by seeking to exercise a right potentially available to them under the

15   Federal law of the United States [under 28 U.S.C. § 1782]," and such applications do not "in any

16   way depart[] from, or interfere[] with, the procedure of the English court."  (Hartley Decl. ¶ 7 &

17   Ex. 3.)  Other English Courts are in accord, with the High Court of Justice, for example, explaining

18   in *Nokia Corp. v. Interdigital Technology Corp.* [2004] EWHC 2920, ¶ 23, that "[i]t is legitimate

19   for the requesting party to use the [Section 1782] request to ascertain facts and obtain documents

20   of which the requesting party is unaware, but which may be in the future deployed in the English

21   proceedings."  (Hartley Decl. ¶¶ 8-10 & Exs. 4-5.)

22

23

24

---

25   [9] *See also, e.g.*, *In re Pishevar*, No. 21-mc-105, 2023 WL 2072454, at *3 (D.D.C. Feb. 17, 2023)
     ("The nature of the English court system ... raise[s] no concerns[.]"); *Eurasian Nat. Res. Corp. v.*
26   *Simpson*, No. 19-mc-699, 2020 WL 8456039, at *1 (D. Md. Jan. 6, 2020) ("[T]here is no suggestion
     that the court presiding over the foreign proceedings [in the U.K.] would not be receptive to the
27   assistance."); *In re Guy*, No. 19-mc-96, 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004)
     (There is no "reason to suppose that the government of the United Kingdom would disfavor
28   granting Applicants relief under § 1782.").

The second *Intel* factor thus weighs in favor of granting Mr. Hermann's Application because not only is there no "authoritative proof"—or any proof whatsoever—that the English Court would reject the evidence sought, but there is affirmative evidence that it would accept that evidence.

### C.    The Third *Intel* Factor Favors Granting the Application:  The Application Does Not Attempt to Circumvent Proof-Gathering Restrictions or Policies.

The third *Intel* factor weighs in favor of discovery where, as here, there is no evidence that the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264-65; *Motorola Mobility*, 2012 WL 4936609 at *2; *Varian Med. Sys.*, 2016 WL 1161568 at, *5.  Indeed, absent a bad-faith attempt to undermine such restrictions or policies, this factor weighs in favor of allowing discovery even where (unlike here) the documents sought would not be discoverable in the foreign jurisdiction.   *Intel*, 542 U.S. at 260-63 (explaining that Section 1782 imposes no foreign-discoverability requirement).

Moreover, as courts considering Section 1782 applications have repeatedly explained, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court."  *In re Nouvel, LLC*, No. 22-mc-0004, 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022) (denying motion to quash subpoena); *In re Vahabzadeh*, No. 20-mc-80116, 2020 WL 7227205, at *5 (N.D. Cal. Dec. 8, 2020) (same).  Courts have "'refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court.'"  *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215, 2020 WL 820327, at *6 (N.D. Cal. Feb. 19, 2020) (citation omitted).[10]

---

[10] *See also, e.g.*, *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 155 (2d Cir. 2022) ("[A] district court abuse[s] its discretion by denying an application on the basis that the applicant had not exhausted its opportunities for discovery before the foreign tribunal" because such a requirement "has no basis in the text or purpose of §1782."); *Rothe v. Aballi*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sept. 27, 2021) ("[T]here is no such exhaustion requirement in § 1782, and reading one into the statute is contrary to law and clearly erroneous."); *In re Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016) (similar); *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998), *as amended* (July 23, 1998) (similar).

Here, there is no indication that any policy of the United Kingdom—or the United States—would weigh against the limited discovery Mr. Hermann seeks, and English lawyer Phil Hartley has affirmatively explained in his declaration that he is aware of no such "proof-gathering restrictions or policies under English law or civil procedure rules that would be circumvented by obtaining evidence pursuant to 28 U.S.C. § 1782" either in general or in this Application. (Hartley Decl. ¶ 12 *see also id.* ¶¶ 5-11); *see also Legatum*, 2021 WL 706436, at *3 (holding Section 1782 application was "not an attempt to circumvent proof-gathering restrictions in either the U.K. or the United States"). Indeed, as explained above, U.S. courts have routinely granted applications under Section 1782 to obtain evidence for use in foreign proceedings in the United Kingdom. Accordingly, the third *Intel* factor weighs in favor of granting Mr. Hermann's Application.

**D.    The Fourth *Intel* Factor Favors Granting the Application:   Mr. Hermann's Request Is Not Unduly Burdensome.**

The fourth *Intel* factor weighs in favor of discovery where, as here, an applicant's discovery request is not "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, as "determined by the Federal Rules of Civil Procedure," *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (citing *In re Letters Rogatory From Tokyo Dist. Prosecutor's Off.*, 16 F.3d 1016, 1019 (9th Cir. 1994)). Under longstanding, ordinary discovery rules, "[d]iscovery 'is permitted if reasonably calculated to lead to the discovery of admissible evidence.'" *HRC-Hainan Holding*, 2020 WL 906719, at *3 (quoting *Franklin v. Madden*, 586 F. App'x 431, 432 (9th Cir. 2014)). And "[r]elevance for purposes of discovery is defined very broadly." *Givens v. Cal. Dep't  of Corrs. & Rehab.*, No. 19-cv-0017, 2023 WL 6313986, at *1 (E.D. Cal. Sept. 28, 2023) (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)).

Notably, courts have consistently held that this factor weighs in favor of granting a Section 1782 Application where the applicant seeks discovery to reveal the identity of a person who allegedly infringed his rights. *See, e.g.*, *Hey, Inc. v. Twitter, Inc. (Hey I)*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (N.D. Cal. Apr. 19, 2022) (granting Section 1782 application subpoena seeking "documents identifying the user(s) of the three [Twitter] accounts; names and addresses of credit card holders registered on the accounts; and access logs for the dates the tweets in question

were posted," and holding that the "discovery is appropriately tailored to documents and information identifying the individual(s) responsible" for alleged wrongful conduct); *In re Takada (Takada II)*, No. 22-mc-80221, 2023 WL 1452080, at *2-3 (N.D. Cal. Feb. 1, 2023) (denying motion to quash subpoena issued pursuant to Section 1782 application and ordering Twitter to produce documents sufficient to identify a user of its service); *IS Prime*, 2021 WL 5889373, at *3-4 (similar); *Legatum*, 2021 WL 706436, at *3 (similar); *Digit. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (similar).

Here, Mr. Hermann's Application seeks only limited discovery from Meta necessary to identify the person or persons responsible for publishing the defamatory Instagram Posts:

> Documents and Communications sufficient to identify the person(s) who made, published, and/or caused to be made or published the Instagram Posts, and/or who own, registered, and/or have accessed the Instagram Accounts, including Documents and Communications reflecting the name(s), address(es), email address(es), phone numbers, and/or any forms or means of payment relating to the Instagram Posts and/or Instagram Accounts, and all IP address(es) from which the Instagram Accounts have been accessed and/or the Instagram Posts were made or published.

(*See* Document Subpoena (Ex. A to Application).)  And a short deposition in which a Meta corporate representative can authenticate and explain the documents produced.  (*See* Deposition Subpoena (Ex. B to Application).)  As such, the burden on Meta is minimal.  Such requests are routinely approved as not being unduly burdensome.  *Hey I*, 2022 WL 1157490, at *2-4; *Takada II*, 2023 WL 1452080, at *2-3; *In re Hattori*, No. 21-mc-80236, 2021 WL 4804375, at *5 (N.D. Cal. Oct. 14, 2021); *Apple Retail UK Ltd.* 2020 WL 3833392, at *4.[11]  Accordingly, this final *Intel* factor also weighs in favor of granting Mr. Hermann's Application.

## IV.     Although the Merits of Mr. Hermann's English Defamation Claims Are Irrelevant, He Has Proffered Evidence to Establish Every Element of His Claims.

Because Mr. Hermann's Application satisfies all three statutory Section 1782 requirements and all four discretionary factors weigh in favor granting his Application, the Court should grant his Application—nothing more is required.  But even to the extent the Court is inclined to look at

---

[11] Mr. Hermann's counsel will, of course, meet and confer with Meta's counsel to discuss ways to obtain this discovery as efficiently and with as little burden as possible.

the merits of the English defamation claims underlying his Application, Mr. Hermann has proffered evidence sufficient to establish each element of those claims.

As an initial matter, examination of the merits of Mr. Hermann's underlying English defamation claims is not required. Although the First Amendment may generally protect "an author's decision to remain anonymous," *Gliner*, 133 F.4th at 933, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including "under the First Amendment," *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433, 436 (2020) (collecting cases; holding First Amendment inapplicable to foreign corporation); *accord id.* at 434 ("[T]he Court has not allowed foreign citizens outside the United States or such U.S. territory to assert rights under the U.S. Constitution. If the rule were otherwise, actions ... against foreign organizations or foreign citizens in foreign countries would be constrained by the foreign citizens' purported rights under the U.S. Constitution. That has never been the law."); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (holding that "an alien who has had no previous significant voluntary connection with the United States" lacks "constitutional protections").

And although this Court has held that the First Amendment protects the "right of domestic listeners to receive speech from foreign speakers," it has strictly limited the applicability of that right to "speech ... directed at and received by [domestic] residents." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021). Here, although the defamatory Instagram Posts target Mr. Hermann, there is no indication that they are meant for a U.S. audience, as Mr. Hermann's mother (Ms. Hargitay) has "a large global fanbase," including in the United Kingdom. (*See* Hermann Decl. ¶ 5.) And, as Section 1782 caselaw citing *Thunder Studios* has explained, there is "no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely accessible to U.S. citizens over the Internet." *Takagi v. Twitter, Inc.*, No. 22-mc-80240, 2023 WL 1442893, at *3 (N.D. Cal. Feb. 1, 2023); *accord Takada II*, 2023 WL 1452080, at *3; *In re Team Co.*, No. 22-mc-80183, 2023 WL 1442886, at *3-4 (N.D. Cal. Feb. 1, 2023); *see also Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 703, 706-08 & n.6 (N.D. Cal. 2022) (admonishing that, because "'[t]he animating purpose of § 1782 is comity'" and

1  "'provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals,'" "there's
2  good reason to tread lightly in applying U.S. free-speech principles abroad" (quoting *ZF Auto. US,*
3  *Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022), and *Intel*, 542 U.S. at 247)).

4      In light of this precedent, courts in this District considering Section 1782 applications have
5  consistently held that "where the record does not indicate that anonymous speakers are entitled to
6  First Amendment protections, U.S. free-speech principles should not factor into a federal district
7  court's evaluation of a § 1782 application." *United States v. Meta Platforms, Inc.*, No. 23-mc-
8  80249, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023); *accord, e.g.*, *United States v. Google*
9  *LLC*, 690 F. Supp. 3d 1011, 1022 (N.D. Cal. 2023); *Hey, Inc. v. Twitter, Inc. (Hey II)*, No. 22-mc-
10  80034, 2023 WL 3874022, at *3 (N.D. Cal. June 6, 2023) (same); *Takada II*, 2023 WL 1452080,
11  at *3-4 (same); *Takagi v. Twitter*, 2023 WL 1442893, at *3 (same); *Team Co.*, 2023 WL 1442886,
12  at *3-4 (same); *Zuru*, 614 F. Supp. 3d at 703, 706-08 & n.6 (same). "Simply assuming First
13  Amendment protection applies, in the absence of any facts or circumstances suggesting that it does,
14  is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the
15  lens of the nearest domestic analog." *Takada II*, 2023 WL 1452080, at *4; *accord Team Co.*, 2023
16  WL 1442886, at *3; *Takagi v. Twitter*, 2023 WL 1442893, at *4.

17      Moreover, even where (unlike here) First Amendment considerations are involved, the
18  majority of courts only require an applicant to "describe the legal and factual bases for a
19  contemplated foreign legal proceeding, and [] explain how the discovery sought will aid
20  prosecution of that proceeding." *Hey II*, 2023 WL 3874022, at *5 (quoting *Takada II*, 2023 WL
21  1442844, at *6); *accord Takagi v. Twitter*, 2023 WL 1442893, at *6. By contrast, a small minority
22  of primarily older decisions took "[a] peek at the merits" to see if the underlying claim is plausible.
23  *See Zuru*, 614 F. Supp. 3d at 70.

24      Here, even if the Court were to consider the merits of the foreign claims underlying
25  Mr. Hermann's Application, they would satisfy any of these inquiries. Mr. Hermann does not
26  simply allege that the Instagram Posts defame him; rather, he has submitted actual evidence
27  (declarations under penalty of perjury) establishing each element of the defamation claim
28  underlying his Application. The defamatory statements were published (Hermann Decl. ¶ 6 &

1    Ex. 1); they identify Mr. Hermann by name, by photograph, and by relation to his mother (*id.*); they

2    are false—Mr. Hermann explains in his Declaration that he has not committed any crimes as the

3    Instagram Posts claim (*id.* ¶ 9); they were published even though the persons who published them

4    know they are false—with one person candidly admitting that they "slander[ed]" Mr. Hermann (*id.*

5    ¶ 6 & Ex. 1 (Post #7)), and another candidly admitting that they have "never seen ... [Mr. Hermann]

6    a day in [their] life and probably never will" (*id.* (Post #8)); and "[t]he Instagram Posts are

7    defamatory of Mr. Hermann under English law" (Hartley Decl. ¶¶ 13-14), and under U.S. law, Cal.

8    Civ. Code § 45; *DeMartini v. DeMartini*, 833 F. App'x 128, 132 (9th Cir. 2020).[12]  And the Courts

9    of England and Wales will have jurisdiction over Mr. Hermann's intended defamation claims, and

10   England and Wales would be the most appropriate forum for Mr. Hermann to bring his claims.

11   (Hartley Decl. ¶ 15.)

12       Mr. Hermann's Application also explains how he attempted (but was unable) to identify the

13   anonymous defamer(s) without judicial assistance and how his Application will lead to information

14   identifying that person(s).  (Hermann Decl. ¶ 12; Young Decl. ¶¶ 3-9; Oliveri Decl. ¶ 4.)

15                              **CONCLUSION**

16       For the foregoing reasons, Mr. Hermann respectfully requests that the Court grant his

17   Application and issue an Order authorizing the issuance of the subpoenas attached to his

18   Application as **Exhibit A** and **Exhibit B**.  A Proposed Order is also attached to Mr. Hermann's

19   Application.

20

21

22

23

24

25

26

27   [12] Mr. Hermann's Application even satisfies the "real evidentiary basis" test that a handful of courts
     have applied to requests for discovery in aid of domestic claims under U.S. law.  *See Highfields*
28   *Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005).

1  Dated: October 24, 2025                    NEWMEYER DILLION LLP

2                                              By:    /s/ C. Kendie Schlecht
                                                     C. Kendie Schlecht (CBN 190978)
3

4                                              CLARE LOCKE LLP

5                                              By:    /s/ Joseph R. Oliveri
                                                     Joseph R. Oliveri (DC Bar No. 994029)
                                                     * *Pro Hac Vice* Application Forthcoming
6

7                                              *Attorneys for Applicant August Hermann*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **FILER ATTESTATION**

2    In accordance with Civil Local Rule 5-1(h)(3), I hereby certify that I have authorization to

3 file this document from the signatories above.

4    I declare under penalty of perjury under the laws of the United States of America and the

5 State of California that the foregoing is true and correct.  Executed on this 24th day of October,

6 2025 at Newport Beach, California.

7

8    _/s/ C. Kendie Schlecht_____
     C. Kendie Schlecht

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28